IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-02017-RM-MEH

CARRICK-HARVEST, LLC d/b/a VERITAS FINE CANNABIS,

    Plaintiff,

v.

VERITAS FARMS, INC., and
271 LAKE DAVIS HOLDINGS, LLC d/b/a VERITAS FARMS,

    Defendants.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**Michael E. Hegarty, United States Magistrate Judge**.

    Plaintiff Carrick-Harvest, LLC d/b/a Veritas Fine Cannabis ("Plaintiff") brings claims for trademark infringement, false designation of origin, unfair competition, cybersquatting, and declaratory relief against Defendants Veritas Farms, Inc. and 271 Lake Davis Holdings, LLC d/b/a Veritas Farms (together, "Defendants") in its First Amended Complaint ("FAC"). ECF 25. Defendants have filed the present motion to dismiss ("Motion") pursuant to Fed. R. Civ. P. 12(b)(6). ECF 37. The Motion is fully briefed and has been referred by District Judge Raymond P. Moore for a recommendation. ECF 65. As set forth below, this Court respectfully recommends granting Defendants' Motion.

### BACKGROUND

    The following are factual allegations (as opposed to legal conclusions, bare assertions, or conclusory allegations) made by Plaintiff in its FAC, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff alleges that it is the owner of the VERITAS trademark "in connection with providing information about cannabis and cannabis products, including, without limitation, through its website at <veritascannabis.com>." FAC at ¶ 9. Plaintiff also "operates a blog under its VERITAS trademark at <veritascannabis.com/weed-words>." *Id.* Further, Plaintiff "sells hats, t-shirts, sweatshirts, lighters, ash trays, stickers and other similar items incorporating its VERITAS trademark." *Id.* In connection with these, Plaintiff uses the "V" below as a design mark ("V Design Mark"):[1]



*Id.* at ¶ 10.

In addition, Plaintiff uses the V Design Mark in conjunction with its VERITAS Mark below (the Court will refer to the V Design Mark and VERITAS Mark together as the "Veritas Marks"):

---

[1] The Court uses the terminology used by Plaintiff in its FAC and Response for the sake of ease. This should not be construed as an endorsement of any argument.

V.
VERITAS

*Id.* at ¶ 11.

Plaintiff has five trademark applications pending with the United States Patent and Trademark Office ("USPTO") for the Veritas Marks, including for "providing agricultural information about cannabis and cannabis strains[,]" "providing a website containing current events[,] news[,] and information about cannabis, cannabis infused products and smoker's articles[,]" and "providing consumer information in the field of marijuana, cannabis and cannabis-infused products." *Id.* at ¶ 12(a)–(f). Plaintiff claims to have been providing these types of informational services using its Veritas Marks since September 2016. *Id.* at ¶ 13. In so doing, Plaintiff "has invested significant monies in promoting, marketing and advertising its goods and services under its Veritas Marks." *Id.* at ¶ 15.

Plaintiff alleges that Defendants "use the mark VERITAS FARMS in connection with cannabis-related goods and services, including to provide information about cannabis and cannabis products." *Id.* at ¶ 16. Defendants do so on their websites located at <theveritasfarms.com> and <theveritaswellness.com>. *Id.* These two websites were created in March 16, 2018 and October 10, 2018, respectively. *Id.* at ¶ 17. On October 29, 2019, Defendants created another website, <myveritasfarms.com>, although there is currently no content on it. *Id.* at ¶ 18. All three websites are referred to as the "Infringing Domains." *Id.* at ¶ 19.

3

Defendants have filed a least four trademark applications with the USPTO in connection with their VERITAS FARMS mark, including for "herbal extracts for medicinal purposes, namely, tinctures, salves, and lotions[,]" "nutraceuticals for use as a dietary supplemental containing hemp extract[,]" and "dietary supplements for pets containing hemp extract." *Id.* at ¶ 20(a)–(d). Beginning around October 2018, Defendants started using the following stylized "V" mark on product packaging:



*Id.* at ¶ 21. Defendants began using this "V" in connection with informational services in late 2018. *Id.* Plaintiff alleges that the VERITAS FARMS and the "V" marks (together, "Infringing Marks") are similar in appearance and commercial impression to its Veritas Marks. *Id.* at ¶¶ 22–24. In fact, Plaintiff believes that "consumers on social media websites and other information service channels have mistakenly tagged Plaintiff as Defendants, that is, such consumers have included the hashtag "#veritasfarms" when referring to Plaintiff." *Id.* at ¶ 25.

Plaintiff makes clear that it "owns common law trademark rights in the Veritas Marks[,] and the marks are protectable under 15 U.S.C. § 1125(a) and under common law for *providing information* about cannabis on its website and in its blog." FAC at ¶ 37 (emphasis added). To

4

protect that right, Plaintiff has brought this suit alleging claims for trademark infringement, false designation of origin and unfair competition, cybersquatting, and declaratory judgment.

## LEGAL STANDARDS

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 680. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

Plausibility refers "'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine

5

whether the plaintiff has set forth a plausible claim.  *Khalik*, 671 F.3d at 1192.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

## ANALYSIS

Plaintiff's FAC asserts five claims against Defendants for alleged use of the Infringing Marks on the Infringing Domains.  Defendants seek dismissal of all claims.  For the reasons set forth below, the Court respectfully recommends granting Defendants' Motion.

**I.     Trademark Infringement (First Claim for Relief)**

A plaintiff bringing a claim for trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a), must allege "(1) that the plaintiff has a protectable interest in the mark; (2) that the defendant has used 'an identical or similar mark' in commerce; and (3) that the defendant's use is likely to confuse consumers.'"  *1-800 Contacts, Inc. v. Lens.com*, 722 F.3d 1229, 1238 (10th Cir. 2013) (quotation omitted).  Defendants challenge Plaintiff's allegations on all three factors. Additionally, Defendants raise a preliminary argument concerning whether Plaintiff's marks are eligible for trademark protection as its business and products concern illegal substances under

federal law. Mot. at 6. The Court will consider that initial argument first and then proceed to the three elements.

A.     Legality

Defendants argue that any common law trademark protection enjoyed by Plaintiff (if any) is limited only to the use in providing information relating to cannabis. Mot. at 6. In so arguing, Defendants contend that Plaintiff's business and products are illegal under federal law under the Controlled Substances Act ("CSA"), 21 U.S.C. §§ 802 *et seq.*, and thus not eligible for trademark protection. *Id.* Plaintiff responds that the provision of informational services about cannabis is not illegal and thus eligible for trademark protection. Resp. at 5.

"A trademark qualifies for registration and its associated benefits if the trademark owner has 'used [the mark] in commerce' or has a bona fide intent to do so, 15 U.S.C. § 105, and courts have long held that the commerce must be 'lawful' for it to satisfy the "use in commerce' requirement." *Kenney v. Helix TCS, Inc.*, 939 F.3d 1106, 1112 n.3 (10th Cir. 2019). In the Fair Labor Standards Act context, the Tenth Circuit has held that "[r]eading 'lawful' into the threshold commerce requirement here would not further the statute's purposes by denying illegal businesses a benefit, *as in the trademark context*, but would thwart the FLSA's goals by exempting illicit markets from costs imposed on lawful employers." *Id.* (emphasis added). "[I]t is not the law that a federally illegal use—even if legal under state law—could support a prior use defense to a federal trademark." *Kiva Health Brands LLC v. Kiva Brands Inc.*, 439 F. Supp. 3d 1185, 1198 (N.D. Cal. 2020).

On December 20, 2018, the Agriculture Improvement Act of 2018 ("2018 Farm Bill") was signed into law. Prior to the 2018 Farm Bill, it was unlikely that the USPTO would approve registration of an application that identified goods and/or services encompassing CBD or other

7

marijuana-related extracts. *See* United States Patent and Trademark Office, Examination Guide 1–19 2–3 (May 2, 2019) ("For applications filed *before* December 20, 2018 that identify goods encompassing CBD or other cannabis products, registration will be refused due to the unlawful use or lack of bona fide intent to use in lawful commerce.").[2]

Considering the above, the Court agrees with Defendants that federal trademark law can only protect marks that are in substance legal under federal law. Protection of marijuana-related goods is therefore prohibited. Even after passage of the 2018 Farm Bill, "the USPTO [would] continue to refuse registration when the identified services in an application involve cannabis that meets the definition of marijuana and encompass activities prohibited under the CSA." *Id.* The CSA defines marijuana as "all parts of the plant Cannabis sativa L., whether growing or not; the seeds therefor; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin." 21 U.S.C. § 802(16)(A). Using this definition, all should agree that the attempt to trademark goods or services in connection with the plant Cannabis sativa L., its parts, or any of its uses would not be permitted under federal law. However, this definition does not help for the attempt to trademark the provision of information regarding such items.

To help, the Court looks to a case not cited by the parties. In *Sanchez v. Ghost Management Grp., LLC*, the District Court for the Central District of California faced a case in which a business called WeedMenu sought federal trademark protection of its mark on a website that provided "information about marijuana dispensaries, delivery services, doctors, brands, and labs in states that have legalized marijuana." No. SACV 19-00442 AG (KESx), 2019 WL 4385762, at *1 (C.D. Cal. July 8, 2019). That court dismissed the plaintiff's complaint for failure to specify its mark.

---

[2] Available at https://www.uspto.gov/sites/default/files/documents/Exam%20Guide%201-19.pdf.

*Id.* at *2–3. In its order, the court does not mention the possibility that the plaintiff's sought trademark protection is illegal under federal law. Presumably, that court would have included that analysis, if true, in its dismissal of the complaint. The lack of such analysis is instructive.

The similarities to this case cannot be ignored. In both, the plaintiff is attempting to trademark not cannabis-related goods and products but rather the provision of information regarding cannabis and cannabis products. The Court recognizes that this is a gray area of law. Based on the parties' arguments and the limited case law and other authorities on the matter, the Court does not find that the provision of information, in this context, is prohibited. In other words, the provision of information regarding cannabis is not illegal under federal law, so it is eligible for trademark protection.

  B. <u>Protectable Interest</u>

Defendants argue against finding a well-pleaded protectable interest on three grounds. First, Plaintiff's website is a service that is not eligible for common law trademark protection. Second, Plaintiff's provision of information is not a "use in commerce." Third, Plaintiff's websites are a form of advertising that cannot establish common law trademark rights. The Court will address the service issue first and then jointly evaluate the "use in commerce" and advertising issues second.

    1. Service

A service may be a protectable interest if three basic criteria are met: "(1) a Service is the performance of some activity; (2) the activity must be for the benefit of someone other than the applicant; and (3) the activity must be recognizable as a separate activity, that is, it cannot be merely incidental or necessary to applicant's larger business." *In re Betz Paperchem, Inc.*, 222 U.S.P.Q. 89, 1984 WL 63026, at *2 (TTAB Mar. 6, 1984) (citing Trademark Manual of Examining

9

Procedure); *see, e.g.*, *In re Florists' Transworld Delivery, Inc.*, 119 U.S.P.Q.2d 1056, 2016 WL 3997062, at *6 (TTAB May 11, 2016) (finding that providing information regarding flowers or conducting promotional events to sell flowers are "merely incidental to the production or sale of goods").

Plaintiff alleges that the "information services" provided through its websites and blog "are permitted under federal law and are offered separately and independently from any products offered for sale by Plaintiff." FAC at ¶ 9. Defendants argue that the provision of information is merely "incidental" to the sale of Plaintiff's products. Mot. at 10. The Court reads the cases cited by Plaintiff on pages seven and eight of its response as demonstrating that when an alleged service is expected in conjunction with the sale of the product, it is not a protectable separate service mark. *See In re Heavenly Creations*, 168 U.S.P.Q. 317, 1971 WL 16427, at *2 (TTAB Jan. 8, 1971) ("This does not mean that the promotion and advertising of one's goods and/or instruction in the use of one's goods, which is required by the very nature and character of the goods, is necessarily a service within the meaning of the statute."); *In re Betz*, 222 U.S.P.Q. 89, 1984 WL 63026, at *2 (TTAB Mar. 6, 1984) ("'[W]e should first ascertain what is an applicant's principal activity under the mark in question . . . and then determine whether the activity embraced by the description of services or goods in the application is in any material way a different kind of economic activity than what any purveyor of the principal service or tangible product necessarily provides.'" (citation omitted); *in re Congoleum Corp.*, 222 U.S.P.Q 452, 1984 WL 63046, at *2 (TTAB May 29, 1984) ("[An] activity that is clearly separate from or over and above that normally expected from one engaged in the manufacture, sale, or distribution of products or services in a particular field is a service in connection with which a service mark can be registered.").

Based on the well-pleaded allegations in the FAC which must be taken as true at this stage, the Court cannot conclude that Plaintiff's marks are merely incidental to its sale of cannabis products. Plaintiff asserts that it has submitted trademark applications for its marks in, among other things, "providing agricultural information about cannabis and cannabis strains," (FAC at ¶ 12(b)), "providing a website containing current events news and information about cannabis, cannabis infused products and smoker's articles," (*id.* at ¶ 12(c)), and "providing consumer information in the field of marijuana, cannabis and cannabis-infused products," (*id.* at ¶ 12(e)). Certainly, these services relate to Plaintiff's sale of cannabis, but they stand as separate activities. The Court recognizes this is a close call. Perhaps when the Court may consider evidence beyond the pleadings such as on summary judgment, Plaintiff's provision of information may be shown to solely benefit itself and as merely incidental to its sale of cannabis. At this stage, though, the Court finds that Plaintiff's allegations establish a separate service.

        2.     Use in Commerce and Advertising

The parties dispute whether Plaintiff's mark in providing information constitutes use "on or in connection with any goods or services . . . in commerce." 15 U.S.C. § 1125(a). The Tenth Circuit has held that while the Internet is an instrumentality of interstate commerce, use on the Internet is not dispositive of use in commerce:

> However, this does not mean that any use of the Internet is necessarily commercial for the purposes of the Lanham Act . . . . Moreover, conflating these two "commerce" requirements would greatly expand the scope of the Lanham Act to encompass objectively noncommercial speech. We therefore decline to adopt [the] proposed rule that any use of a trademark on the Internet is a use "in connection with goods or services."

*Utah Lighthouse Ministry v. Found. for Apologetic Info. and Research*, 527 F.3d 1045, 1054 (10th Cir. 2008). Rather, a service qualifies as being used in commerce "'when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are

11

rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services.'" *Dalkita, Inc. v. Distilling Craft, LLC*, 356 F. Supp. 3d 1125, 1137 (D. Colo. 2018) (quoting 15 U.S.C. § 1127).

The Court reads the caselaw cited by Defendants to hold that use in commerce requires some commercial transaction that results in a benefit such as profit. *Radiance Found., Inc. v. N.A.A.C.P.*, 786 F.3d 316, 326 (4th Cir. 2015) ("The provision of mere 'information services' without any commercial or transactional component is speech—nothing more."); *Aviva USA Corp. v. Vazirani*, 902 F. Supp. 2d 1246, 1259 (D. Ariz. 2012) ("Limiting the Lanham Act to cases where a defendant is trying to profit from a plaintiff's trademark is consistent with the Supreme Court's view that [a trademark's] function is simply to designate the goods as the products of a particular trader and to protect his good will against the sale of another's product as his.") (internal quotation marks omitted); *Specht v. Google, Inc.*, 758 F. Supp. 2d 570, 593 (N.D. Ill. 2010) ("Allowing a mark owner to preserve trademark rights by posting the mark on a functional yet almost purposeless website, at such nominal expense, is the type of token and residual use of a mark that the Lanham Act does not consider a bona fide use in commerce.") (quotation omitted); *Davis v. Avvo, Inc.*, 345 F. Supp. 3d 534, 540 (S.D.N.Y. 2018) (finding that a website of informational directory of attorneys simply provides information and is not "a commercial transaction").[3]

Although not cited by any party, the Court has found countervailing case law. *See Cable News Network L.P., L.L.L.P. v. CNNews.com*, 177 F. Supp. 2d 506, 517–18 (E.D. Va. 2001), *aff'd in part, vacated in part on other grounds sub nom. Cable News Network, LP, LLLP v.*

---

[3] The Court recognizes that Plaintiff attempts to distinguish some of these cases on factual grounds; for example, that cases like *Aviva* and *Radiance* concerned nominative use of a trademark which is not at issue here. However, Plaintiff does not seem to dispute the legal reasoning in these cases; that is, that some commercial transaction is necessary.

12

*CNNews.com*, 56 F. App'x 599 (4th Cir. 2003) (finding that a website which neither sold or offered to sell goods outside of China but offered "news and information (i.e., 'commerce') to persons with Chinese language skills in" the United States affected commerce); *Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft*, 213 F. Supp. 2d 612, 619 (E.D. Va. 2002) ("Indeed, maintaining a website that provides commercial information originally supplied by third-party companies clearly satisfies the 'use in commerce' requirement").

The Court finds that the better application of law comes from the cases cited by Defendants. That is, in order to be a use in commerce, there must be some commercial or transactional component. It is helpful to think of this concept in terms of advertising.

> [A] web page that merely provides information about the goods, but does not provide a means of ordering them, is viewed as promotional material, which is not acceptable to show trademark use on goods. . . . Merely providing a link to the websites of online distributors is not sufficient. There must be a means of ordering the goods directly from the applicant's web page, such as a telephone number for placing orders or an online ordering process.

Trademark Manual of Examining Procedure, October 2018 § 904.03(i) (citations omitted). Purely promotional or informational material is generally not a use in commerce for trademark purposes. *See In re Florists' Transworld Delivery*, 2016 WL 3997062, at *4 ("[Marks] consisting of advertising, promotional or informational material, . . . normally are acceptable when they show the mark in advertising the service(s) . . . and create the required direct association by containing a reference to the specified service(s)").

Following the weight of authority, the Court finds that Plaintiff has not adequately pleaded that its Veritas Marks constitute a use in commerce. The provision of information is a purely promotional activity. There are no well-pleaded allegations in the FAC to demonstrate that Plaintiff's websites provide any commercial benefit to Plaintiff. To be fair, Plaintiff does allege that "[i]ts extensive use of the Veritas Marks has created a strong, distinctive and identifiable brand

that carries substantial goodwill in the marketplace." FAC at ¶ 15. Without supporting allegations, though, the Court finds this sole allegation to be a bare assertion that does not need to be taken as true at this stage. Therefore, the Court respectfully recommends granting the Motion on this ground.[4]

### C.  Identical or Similar Mark in Commerce

Defendants contend that Plaintiff has not adequately pleaded that they have used an identical or similar mark in commerce. Specifically, Defendants argue that the FAC "fails to allege any facts as to how [their] alleged 'Infringing Domains' provide informational services about cannabis and cannabis products. Mot. at 13. In response, Plaintiff focuses on the similarity between "VERITAS" and "VERITAS FARMS" and the similarities in the appearance of the marks. Resp. at 13. In its FAC, Plaintiff alleges that "Defendants use the mark VERITAS FARMS in connection with cannabis-related goods and services, including to provide information about cannabis and cannabis products at their websites." FAC at ¶ 16. The Court finds that this allegation is conclusory since it is unsupported by any other well-pleaded allegations. For instance, Plaintiff describes four trademark applications submitted by Defendants, none of which concern the provision of information regarding cannabis. *E.g.*, FAC at ¶ 20(b) (trademark application for "dietary supplements for pets"). Indeed, Plaintiff states that one of the alleged

---

[4] The Court notes that Plaintiff argues that it can extend the protection of its mark through the natural zone of expansion doctrine. FAC at ¶ 31. This doctrine provides "that a senior user of a mark has rights not only for the service it actually provides but also for those into which it might reasonably expand in the future." *Newmark Realty Capital, Inc. v. BGC Partners, Inc.*, No. 16-cv-01702-BLF, 2018 WL 2573183, at *16 (N.D. Cal. Mar. 30, 2018). In the FAC, Plaintiff alleges, as an example, that "Plaintiff has provided information about cannabis on its website for many years, and it is well within Plaintiff's zone of natural expansion to expand to the sale of smokable hemp." FAC at ¶ 31. Because the Court finds that the underlying trademark is not eligible for protection for lack of the use in commerce element, the Court does not consider this zone of expansion argument.

Infringing Domains has no content. *Id.* at ¶ 18 (<myveritasfarms.com>). The Court finds no basis in the FAC to conclude that Defendants have used an identical or similar mark in commerce with regard to the provision of cannabis-related information. Accordingly, the Court respectfully recommends granting the Motion for failure to adequately plead this element of a trademark infringement claim.

>        D.      Likely to Confuse Consumers

The Tenth Circuit has identified six, non-exhaustive factors for determining whether a likelihood of confusion exists: (1) degree of similarity between the marks, (2) intent of the alleged infringer in adopting the mark, (3) evidence of actual confusion, (4) relation in use and the manner of marketing between the goods or services marketed by the competing parties, (5) the degree of care likely to be exercised by purchasers, and (6) the strength or weakness of the marks. *1-800 Contacts, Inc.*, 722 F.3d at 1239 (citing *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089–90 (10th Cir. 1999)). "Likelihood of confusion is a question of fact." *Hornady Mfg. Co., Inc. v. Doubletap, Inc.*, 746 F.3d 995, 1001 (10th Cir. 2014). Defendants assert that Plaintiff has not sufficiently pleaded as to any of the factors. Mot. at 14. Plaintiff responds that it has adequately pleaded the likelihood of confusion to consumers and does not need to conclusively prove such factors at this stage. Resp. at 14.

The Court agrees with Plaintiff here. Plaintiff has alleged that "[t]he combination of using VERITAS FARMS in conjunction with the stylized V Mark has created, and continues to create, consumer confusion in the marketplace." FAC at ¶ 24. Moreover, "consumers on social media websites and other information service channels have mistakenly tagged Plaintiff as Defendants." *Id.* at ¶ 25. Assuming that a similar or identical mark has been used in commerce, the Court finds that Plaintiff's allegations demonstrate that the six factors identified above weigh in favor of

finding likelihood of confusion, especially given that this is a question of fact. Thus, the Court does not recommend granting the Motion on this ground.

### II. False Designation of Origin and Unfair Competition (Second Claim for Relief) and Common Law Unfair Competition (Fourth Claim for Relief) Claims

In this case, the elements for Lanham Act and common law unfair competition claims are the same as for the trademark infringement claim. *Cleary Bldg. Corp. v. David A. Dame, Inc.*, 674 F. Supp. 2d 1257, 1269–70 (D. Colo. 2009). As a result, the Court's rulings above apply to these claims. Hence, the Court respectfully recommends granting the Motion as described in this Recommendation for the trademark infringement claim.

### III. Violation of the Anti-Cybersquatting Consumer Protection Act (Third Claim for Relief)

To adequately state a claim under 15 U.S.C. § 1125(d), a plaintiff must establish (1) that the marks are distinctive at the time of registration of the domain name, (2) that the domain name registered by the defendant is identical or confusingly similar to the trademarks, and (3) that the defendant used or registered the domain names with a bad faith intent to profit. *Cleary Bldg. Corp.*, 674 F. Supp. 2d at 1263 (citing *Utah Lighthouse Ministry*, 527 F.3d at 1057). While Defendants seek dismissal based on all elements, they emphasize that Plaintiff has failed to properly allege bad faith. Mot. at 18–19. The Court agrees.

Plaintiff's allegations of bad faith are found in paragraphs fifty-two and fifty-three of the FAC. Plaintiff asserts that "Defendants registered the Infringing Domains in bad faith based on their prior knowledge of Plaintiff's trademark rights and deliberate selection of the Infringing Domains in order to cause initial interest confusion for commercial gain." FAC at ¶ 52. Further, Plaintiff contends that "Defendants' use of the Infringing Domains at all times has been an intentional and willful attempt to profit in bad faith from Plaintiff's mark." *Id.* at ¶ 53.

The Court agrees with Defendants that these allegations are conclusory. There are no well-pleaded allegations in the FAC to support them. They do nothing more than recite the element of the claim. Under current pleading standards, that is not allowed. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). In failing to adequately plead this element of the claim, Plaintiff has failed to state a claim.[5] Therefore, the Court respectfully recommends granting the Motion as to this claim.

## IV.   Declaratory Judgment (Fifth Claim for Relief)

As described in this Recommendation, the Court is recommending dismissal of the FAC as to all claims. The parties agree that if there is no claim for trademark infringement then there is no justiciable dispute before the Court. Accordingly, if Judge Moore agrees in dismissing that claim, the Court also respectfully recommends granting the Motion as to the declaratory judgment claim.

## V.   Leave to Amend

Having found Plaintiff failed to sufficiently plead its claims, the Court now turns to the issue of whether dismissal of the claims should be with or without prejudice. "In dismissing a complaint for failure to state a claim, the court should grant leave to amend freely 'if it appears at all possible that the plaintiff can correct the defect.'" *Triplett v. LeFlore Cty., Oklahoma*, 712 F.2d 444, 446 (10th Cir. 1983) (quoting 3 Moore's Federal Practice, ¶ 15.10 & n. 2 (1983)). Here, the Court recognizes that Plaintiff has already amended its Complaint once. As described in this Recommendation, the Court recommends dismissing the trademark infringement and unfair competition claims, in part, as a matter of law for failure to show a mark that is used in commerce.

---

[5] In so finding, the Court does not address Defendants' other arguments.

17

Amendment as to those claims is likely to prove futile. Thus, the Court respectfully recommends dismissing those claims with prejudice; consequently, the declaratory judgment claim should also be dismissed with prejudice. *See E.Spire Commc'ns, Inc.*, 392 F.3d 1204, 1211 (10th Cir. 2004) ("A court may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason.") (citation omitted). However, the Court cannot say, despite Defendants arguing otherwise, that amendment of the cybersquatting claim would be futile. Therefore, the Court respectfully recommends dismissing the cybersquatting claim without prejudice.

## CONCLUSION

For the reasons described herein, the Court respectfully recommends **GRANTING** the Defendants' Motion [filed October 14, 2020; ECF 37] as follows: dismiss with prejudice the trademark infringement claim (First Claim for Relief), the false designation of origin and unfair competition claim (Second Claim for Relief), the common law unfair competition claim (Fourth Claim for Relief), and the declaratory judgment claim of superior trademark rights (Fifth Claim for Relief) and dismiss without prejudice the cybersquatting claim (Third Claim for Relief) pursuant to Fed. R. Civ. P. 12(b)(6).[6]

---

[6] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676–83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).

Respectfully submitted this 25th day of January, 2021, at Denver, Colorado.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge

19